IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Darin Jerikovsky,                                    12-CV-03119-JNE/LIB

     Plaintiff,                  **MEMORANDUM IN SUPPORT**
              **OF DEFENDANT RUST-OLEUM**
  v.          **CORPORATION'S MOTION**
               **FOR SUMMARY JUDGMENT**

Rust-Oleum Corporation,

     Defendant.

---

I.   **INTRODUCTION AND RELIEF REQUESTED**

   This case arises out of an explosion of an aerosol can manufactured by defendant Rust-Oleum Corporation. Plaintiff has testified that the can exploded when he shook it up.

   To support his claims, plaintiff must offer admissible expert testimony linking the explosion to a claimed defect. His expert, Dr. Michael Fox, has offered one or perhaps two opinions about the cause of the event. At times, he appears to claim that the can blew up simply because plaintiff was shaking it. Principally, though, he appears to claim that the can was damaged before plaintiff purchased it and that it then blew up when plaintiff shook it.

   As set out in greater detail in Rust-Oleum's *Daubert* motion (filed concurrently with this motion[1]), neither of Dr. Fox's self-contradictory opinions is admissible:

   **1.  No engineering or other scientific analysis supports Dr. Fox's opinion that the aerosol can exploded simply because plaintiff shook it up.** No peer-reviewed articles support this opinion. Dr. Fox's methodology consists simply of believing

---

[1] Rust-Oleum is filing this motion concurrently and in conjunction with its (1) Motion Under Rule 702 to Exclude Expert Testimony of Dr. Michael J. Fox and (2) Motion for Sanctions for Plaintiff's Spoliation of Evidence.

plaintiff's testimony and hearsay reports—a methodology that has no support in the literature and that cannot support a reliable opinion. Further, Dr. Fox did not test his hypothesis that the can exploded because it was shaken. Rust-Oleum's independent expert tested and disproved that hypothesis. Because no scientific or engineering analysis supports this opinion, it should be excluded.

2.      **In regard to Dr. Fox's opinion that the can was damaged before he purchased it, that opinion contradicts plaintiff's own testimony and otherwise rests on pure speculation.** Plaintiff himself testified that the can was not dented when he purchased it. Other witnesses confirm that testimony. Dr. Fox cites no testimony or other evidence showing that the can was dented when plaintiff purchased it. Further, Dr. Fox's opinion is not shared by anyone else in the field. It is, in fact, utterly unique. He did not perform any work showing that a can may be damaged to precisely the right extent that it retains its integrity, yet fails at some later time because it is shaken. Further, he did not test his hypothesis that the can exploded because of some pre-existing but invisible damage to it. Rust-Oleum tested Dr. Fox's hypothesis (to the extent that it is testable) and disproved it. Given that Dr. Fox's opinion on this point is contradicted by plaintiff's own testimony, and given that the opinion is otherwise entirely speculative, that opinion should be excluded.

3.      **Plaintiff spoliated critical evidence that would have disproved his claims regarding causation.** As set forth in Rust-Oleum's Motion for Sanctions for Spoliation of Evidence, plaintiff discarded a piece of crucial evidence in this case—that is, the wire spool that he was using as a painting stand at the time of the explosion. Rust-Oleum believes that plaintiff struck the aerosol can on the spool at least 24 times. Plaintiff denies doing so, and his expert claims that the spool does not show any witness marks. But plaintiff discarded the evidence itself, even though he knew that it constituted evidence in this case. In its spoliation motion, Rust-Oleum has requested that the Court sanction plaintiff by entering an order requiring the trier of fact to conclude that the

spoliated evidence would have been adverse to plaintiff's claims in this case. Further, only one adverse inference can be drawn: that is, that plaintiff struck the can against the spool. Given that adverse inference, any reasonable trier of fact would necessarily conclude that plaintiff cannot prove his claims against Rust-Oleum. In particular, he cannot prove his own claim that the can merely blew up while he was shaking it, and he cannot prove his expert witness's claim that someone else damaged the can and thereby caused it to explode.

Accordingly, because plaintiff cannot offer admissible expert testimony supporting his claims, Rust-Oleum respectfully requests, under Federal Rule of Civil Procedure 56(c), that the Court enter summary judgment dismissing all of plaintiff's claims.

## II.   EVIDENCE RELIED UPON

Rust-Oleum relies on the accompanying declarations of Daniel J. Gunter ("Gunter Decl."), Michael Murphy ("Murphy Decl."), Richard B. Loucks ("Loucks Decl."), Kevin Lewis ("Lewis Decl."), Warren Peters ("Peters Decl."), and Jill Dahl ("Dahl Decl."), and the exhibits attached thereto; and the pleadings and files in this case.

## III.   STATEMENT OF FACTS

### A.   Plaintiff Purchased an Undented Can of Rust-Oleum Spray Paint

This case arises from the explosion of a can of aerosol spray paint. Rust-Oleum purchased the part of the product at issue—that is, the can itself—from Ball Corporation. (Murphy Decl. ¶2.) Rust-Oleum filled and closed the can and subjected it to a hot-water bath test, in accordance with regulations promulgated by the Department of Transportation. (*Id.* ¶¶3-4.) The can passed the hot-water bath test. (*Id.* ¶4, Ex A.)

The can was manufactured in August 2007. (*Id.* ¶3.) It was purchased by Peter's Hardware in Wright, Minnesota, from a distributor. (Peters Decl. ¶5.) The co-owner of Peter's Hardware, Mr. Warren Peters, testified that, as a matter of practice, Peter's Hardware does not stock or sell damaged goods. (*Id.* ¶¶4–6.) According to Mr. Peters, if

Peter's Hardware receives damaged goods, those goods are destroyed, and Peter's requests a credit from the distributor. (*Id.* ¶5.)

Plaintiff purchased the can of spray paint during the afternoon of May 31, 2012. (Gunter Decl., Ex. A (Jerikovsky Dep. at 44:10–17).) He purchased the product to spray-paint a part on a commercial truck that he was repairing. (*Id.* at 51:5–18.)

Plaintiff had been trained not to strike an aerosol can because doing so could cause it to explode, potentially resulting in personal injury. (*Id.* at 13:7–18:6.) And, on the day of the incident, he read the warning on the Rust-Oleum can and understood that he should not strike the can. (*Id.* at 48:15–23, 92:9–93: 18.)

 At the time of the purchase, the counter clerk at Peter's was Ms. Jill Dahl. Ms. Dahl has testified that she did not notice any damage to the can. (Dahl Decl. ¶6.)

Plaintiff also did not notice any damage to the can when he purchased it. In particular, he did not notice any dents in the can:

> Q.      When you looked at the can, when you purchased it, did you notice anything that struck you as being unusual about the can?
>
> A.      No.
>
> Q.      Did it seem to be rusty?
>
> A.      No.
>
> **Q.      Did you notice any dents in it?**
>
> **A.      No.**
>
> Q.      Did it seem to be dusty?
>
> A.      No.
>
> Q.      Would it be fair to say that when you looked at it, it looked like your basic average can of spray paint on the shelf?
>
> A.      Yes.

(Jerikovsky Dep. at 52:17–53:6 [emphasis added].)

Plaintiff testified that he did not strike the can on anything hard at any time between the purchase of the product and the explosion:

> Q    [B]etween the time you purchased the can or the time
> the explosion occurred, did you strike the can on anything
> hard?
>
> **A.    No. It went from my hand to my pickup seat and
> back to my hand.**
>
> **Q.    Pick up seat's soft, right?**
>
> **A.    Yes.**

(*Id.* at 56:4–10 [emphasis added].)

Plaintiff began using the can of spray paint. He testified that he shook the can on two occasions and the can exploded. The top of the can struck and injured plaintiff's right cheek. (*See id.* at 51:5–23.)

To date, plaintiff has incurred a little more than $3,200 in medical expenses. (Gunter Decl., Ex. B.) He has discussed having plastic surgery done on the scar on his cheek, but has not undergone that surgery. (Jerikovsky Dep. at 74:16–24.) Plaintiff claims that additional surgery will cost another $3,000. (Gunter Decl., Ex. C.)

Plaintiff did not miss any time from work. The day after the explosion, he went on a planned fishing trip. (Jerikovsky Decl. at 65:10–13; 69:24–70:2.)

### B.    <u>Plaintiff Spoliated Critical Evidence</u>

Plaintiff and his expert appear to disagree on what caused the explosion. Plaintiff claims that the can simply exploded in his hand as he was shaking it. (*Id.* at 51:20–23; 53:7–54:3; 85:15–18.) Plaintiff's expert appears to believe that the can was struck and that the striking of the can caused the explosion: "[The] explosive failure is due to *instantaneous* and catastrophic circumferential cracking caused by minor impact." (Gunter Decl., Ex. D (Report of Dr. Michael Fox ("Fox Report") at 7-5 [emphasis added]).)

Because plaintiff testified that he did not strike the can, his expert has offered the opinion that the can must have been damaged before plaintiff purchased it. (*See* Fox Report at 8-2.)  As set out at greater length in Rust-Oleum's *Daubert* motion, Dr. Fox's hypothesis rests on speculation:

> It cannot be ruled out that some minor impact took place before the JRO container . . . was shaken and the shaking provided the final force to initiate the failure. That prior minor impact *could have happened* at [Rust-Oleum], during transportation, during storage, or handling in the retail environment. *Perhaps* a store clerk accidentally dropped the JRO while placing it on the retail shelf.

(Fox Report at 8-2 [emphasis added].)

Dr. Fox's opinion is not only unsupported by the evidence but is in fact *contradicted* by the evidence. As set out above, the undisputed evidence shows that plaintiff purchased an *undamaged* can from Peters Home and Hardware.

Although plaintiff purchased an *undamaged* can, the undisputed evidence shows that the bottom of the can has now been crushed by an impact. The crushing of the bottom of the can is evident in photographs such as this one, which Dr. Fox includes in his report:



(Fox Report at 4-2.)

What impact caused the damage now obvious on the bottom of the can?

As noted, plaintiff was using a wooden wire spool as a painting stand when the explosion occurred. (Jerikovsky Dep.. at 51:5–18; 54:8–12.) Dr. Fox, considered the possibility that plaintiff struck the can against the spool. He offers two reasons for rejecting that possibility: (a) plaintiff testified that he did not strike the can on the spool and (b) the spool (says Dr. Fox) does not show any witness marks from being struck by the can, and Dr. Fox would expect the spool to show such marks had it been struck. (Fox

Report at 1-1 to 1-2, 4-5, 5-6, 8-2.)

But plaintiff has not produced the spool for inspection. (Gunter Decl., Ex. E at 1–3.) Indeed, he discarded the spool at some unknown time after the incident, and it cannot now be found. (*Id.* at 3.) Further, plaintiff did not merely permit the spool to be lost. Instead, he deliberately discarded the spool, taking it to a company that had no duty to retain the spool and that has since lost track of it. (*Id.*) As an explanation for his actions, plaintiff claims simply that he no longer wanted the spool in his yard. (*Id.*)

Before plaintiff threw away the spool, two people photographed it: a deputy sheriff for Carlton County and plaintiff's sister, Lisa Westendorf. (Roberts Decl. ¶¶6–10, Exs. 1 & 2; Gunter Decl., Ex. F.) Indeed, on June 20, 2012—less than three weeks after the incident—Ms. Westendorf sent cell-phone photos of the spool to plaintiff's attorneys in this matter, the Robins Kaplan firm. (Gunter Decl., Ex. F.) Accordingly, the undisputed evidence shows that plaintiff's attorneys knew of the existence of the spool before plaintiff ridded himself of it.

The evidence of the spool is obviously important. Deputy Sheriff Roberts photographed it. Plaintiff's expert relied on a cell phone photo of the spool in forming his opinions. (Fox Report at 1-2.) And plaintiff's own sister sent photographs of the spool to plaintiff's counsel.

Dr. Richard Loucks, one of Rust-Oleum's experts, reviewed the deputy sheriff's photographs of the spool and counted a total of 24 marks on the top of the spool that appear to be witness marks—that is, marks caused by the striking of the Rust-Oleum can on the top of the spool:

//

//

//

//

//



(Loucks Decl. ¶¶2-3, Ex. A (Report of Dr. Richard B. Loucks ("Loucks Report") at 44–47).)

Through careful measurement of objects shown in the photograph, Dr. Loucks was able to confirm that the witness marks very closely match the size of the base of the aerosol can at issue. (*Id.* at 44–45.) But Dr. Loucks quite reasonably believes that the actual spool would provide additional evidence, as it would confirm the size and depth of the witness marks and other marks on the top of the spool. (*Id.* at 53.)

### C.     Plaintiff's Expert Contradicts Plaintiff's Own Testimony and Otherwise Relies on Sheer Guesswork

As noted above, plaintiff retained Dr. Michael Fox, a chemist, to offer opinions as to the design and manufacture of the can. (*See* Fox Report, Attachment A, General Resume at 1.) Rust-Oleum has filed a separate motion to exclude Dr. Fox's opinions under Rule 702 and *Daubert.* For purposes of this motion, Rust-Oleum notes the following:

Dr. Fox appears to offer two self-contradictory opinions as to causation. At times, he appears to opine that the subject can may have failed simply because plaintiff shook it up. (*See, e.g.*, Fox Report at 4-4; 8-1 to 8-3.) But through the majority of the report, he

appears to offer the opinion that someone other than plaintiff damaged the can before plaintiff purchased it and that this preexisting damage caused the can to explode when plaintiff shook it up. (*See, e.g.*, Fox Report at 7-5)

As set out at greater length in Rust-Oleum's *Daubert* motion, neither of these causation opinions is admissible, as both rely on unadorned speculation. In regard to the "shake it up" hypothesis, Dr. Fox has done absolutely nothing to show that he applied any scientifically reliable methodology. (*See, e.g.*, Loucks Report at 67, 69.) Instead, his methodology, from beginning to end, consists simply in believing the reports of nameless individuals claiming that aerosol cans exploded on being shaken. (*See* Fox Report at 4-4, 8-1 to 8-2.)

Moreover, Dr. Fox has not shown that this theory is generally accepted in the scientific community. He has not cited a single paper published by anyone—not even by himself—showing that an aerosol can will fail simply because it is shaken. He performed no engineering or scientific analysis showing that an aerosol can might fail from shaking alone. (*See, e.g.*, Loucks Report at 67, 69.) And he has never bothered to test that hypothesis. (*Id.*) His opinion amounts to mere *ipse dixit:* we are invited to believe it because he says it.

In regard to the "drop and shake" hypothesis, Dr. Fox's opinion does not rest on a scientifically reliable methodology. (Fox Report at 8-2.) The opinion relies on his speculation that the can was damaged before plaintiff purchased it. Further, that speculation contradicts plaintiff's own testimony and the declaration testimony of Mr. Peters and Ms. Dahl.

Moreover, Dr. Fox has not shown that this theory is generally accepted in the scientific community. This theory is in fact unique to Dr. Fox, and it appears to have been tailor-made for this litigation. Even his own published paper (discussed at greater length in Rust-Oleum's *Daubert* motion) does not state that an aerosol can may be damaged, yet retain its integrity long enough to fail when it is shaken up. Indeed, Dr. Fox's published

paper *does not even consider that scenario.* (*See* Fox Report, Attachment D, "Circumferential Catastrophic Burst Failures" at 325–27.)

Further, Dr. Fox performed no engineering analysis showing that a can may be damaged to precisely such an extent that it would remain intact for an indeterminate period, only to fail later when the user shakes it up. And he has never bothered to test that hypothesis. Accordingly, this opinion, too, is inadmissible.

### D.   Rust-Oleum's Independent Expert Tested and Disproved Dr. Fox's Causation Opinions

Rust-Oleum retained Kevin Lewis, a registered professional engineer, to test Dr. Fox's hypothesis that the can failed because (a) it had suffered some "minor impact" and (b) plaintiff then shook up the can. (*See* Lewis Decl. ¶¶2-3, Ex. A (Report of Kevin Lewis ("Lewis Report") at 4).)

To test that hypothesis, Mr. Lewis dropped 20 cans a distance of four feet onto a steel plate. (*Id.*) His test rig duplicated a testing rig developed by Dr. Fox. (*Id.* at 4–5.) Mr. Lewis chose to test the cans by dropping them four feet because Dr. Fox had hypothesized that the can might have been dropped such a distance or suffered some other impact equivalent to a four-foot drop. (*See id.*; Fox Report at 7-2 [discussing drops from two, three, or four feet].)

After each of the cans was dropped, it was subjected to two rounds of shaking: first by human testers, and then by a device powered by a one-horsepower electric motor. (*Id.* at 6–7.) The electric motor shook the cans far harder than the human subjects could shake them. (*Id.* at 6–7, 11.)

Despite the severity of the shaking, none of the 20 tested cans failed. (*Id.* at 11.)

This protocol tested and disproved the "shake it up" hypothesis. If that hypothesis were valid, then one would expect that at least one of the cans would fail. Because none did, the hypothesis should be rejected.

The protocol also tested and disproved the "drop and shake" hypothesis.

And, finally, the protocol tested and disproved Dr. Fox's "minor impact" hypothesis.[2] None of the cans exploded, even though they were all dropped a distance of four feet.

### E.     Dr. Fox's Own Testing Confirms That the Can Exploded Because of Severe Abuse Immediately Before It Exploded

In the past, Dr. Fox conducted testing that not only tends to disprove his second hypothesis *but also proves that the can exploded because plaintiff abused it severely*.

In 2011 Dr. Fox published an article titled "Circumferential Catastrophic Burst Failures of Pressurized Vessels" ("Burst Failures").[3] Rust-Oleum does not agree with all of the opinions set out in the article; nor does any other peer-reviewed article support those other opinions. But the article reveals that *Dr. Fox conducted testing that helps establish that aerosol cans will fail only after they have been severely abused*.

Specifically, Dr. Fox dropped some unknown number of aerosol cans of similar design[4] a distance of six and one-half feet onto a steel plate. ("Burst Failure" at 326.) Some unknown number of the tested cans failed. (*Id.*) He never tells us how many cans he tested, but he does state that some of those cans failed after 8 to 12 drops. (*Id.*) Tellingly, *none* of the cans failed after a single drop. (*See id.*)

As noted, Dr. Fox fails to set out the actual results of his testing: he does not tell us how many cans he tested and what the results were for the total population of tested cans. Because his article does not include that information, no one can determine whether his testing provided any measure of scientific validity. But despite its inadequacies, the

---

[2] Dr. Fox does not assert that the explosion in this case was caused by a "minor impact" that occurred immediately before the explosion. Obviously, that opinion would contradict plaintiff's sworn testimony that he did not strike the can.

[3] 11 J. FAIL. ANAL. & PREVEN. 320 (2011), included as Attachment D to the Fox Report.

[4] The cans at issue in Dr. Fox's article are not true exemplars of the can at issue in this case. The cans at issue in his article are known as "2N" cans, in accordance with the applicable federal regulations. ("Burst Failures" at 322.) The can at issue in this case is a "2P" can. (Fox Report at 3-1.) 2P cans and 2N cans have different design specifications. Dr. Fox does not explain why it is permissible to extrapolate directly from 2N cans to 2P cans. He simply does so—another example of his proceeding by *ipse dixit.*

reported results of Dr. Fox's testing disprove his second causation claim in this case. Specifically, his testing shows that cans *do not fail after one, two, three, four, five, six, or even seven drops*—even when dropped from a height of six and one-half feet. ("Burst Failures" at 326.) That fact—based on Dr. Fox's own published article—eviscerates his opinion that a single drop may cause a product to fail.

Further, Dr. Fox's own test *confirms* Rust-Oleum's assertion that the explosion was caused by multiple impacts of the can on some hard surface—such as the wooden spool that plaintiff later spoliated.

It also appears that Dr. Fox may have tested some cans in this case. He appears to have dropped cans from heights of two, three, and four feet. (*See* Fox Report at 7-1 to 7-3.) None of the cans exploded. (*See id.*) That testing, too, confirms that these aerosol cans will not explode even when damaged in this way. Instead, as confirmed by Dr. Fox's published test results, aerosol cans will explode only when abused by subjecting them to impacts equivalent to at least eight drops from a height of six and one-half feet. ("Burst Failures" at 326.)

In short, Dr. Fox's causation opinions in this case are entirely unsupported by a reliable methodology. They should be excluded.

### F.   Procedural History and Status

Plaintiff filed his complaint in this action on December 14, 2012. (Dkt. # 1.) The complaint alleges four causes of action: strict liability; negligence; negligence—failure to warn; and breach of implied warranty. (*See id.*) Plaintiff disclosed his expert's opinions on October 22, 2013. Rust-Oleum disclosed its experts' opinions on December 18, 2013. Discovery is scheduled to close on March 14, 2014. (Dkt. # 45.)

## IV.   ARGUMENT AND AUTHORITIES

Under Minnesota law, theories of negligence, strict liability, and breach of implied warranty merge into a single theory of strict liability in products liability cases. *See, e.g.*, *Rousu v. Rubbermaid Comm. Prods.*, *LLC*, No. 09–1987 (MJD/LIB), 2011 WL 884125,

at *5 (D. Minn. Mar. 14, 2011) (citing *Bilotta v. Kelly Co.*, 346 N.W.2d 616, 623 (Minn. 1984)). *See also Wolden v. Gangelhoff*, 241 N.W.2d 650, 651 (Minn. 1976).

To survive summary judgment, the plaintiff must establish a genuine issue of material fact as to each of the three elements of a strict liability claim: (1) that the subject product was in a defective condition unreasonably dangerous for its intended use; (2) that the alleged defect existed when the product left the defendant's control; and (3) that the alleged defect was the proximate cause of the plaintiff's injury. *Rousu*, 2011 WL at *5 (citing *Bilotta*, 346 N.W.2d at n. 3); *Wolden*, 241 N.W.2d at 651.

Under "any theory of products liability, the plaintiff must show a causal link between the alleged defect and the injury." *Anderson v. Christopherson*, 816 N.W.2d 626, 631-32 (Minn. 2012)[5]; *Rients v. International Harvester Co.*, 346 N.W.2d 359, 362 (Minn. App. 1984)[6]; *see also Haley v. C.B. Fleet Co., Inc.*, No. 07–4011 (RHK/AJB), 2009 WL 1653524, at *1 (D. Minn. June 10, 2009).

To survive summary judgment, causation theories must be reasonably supported by available evidence, not speculation. *Rients*, 346 N.W.2d at 362. As the Eighth Circuit has recognized, a plaintiff must do more than show that an accident occurred and provide a plausible explanation for the accident: that is, a plaintiff in a product liability case cannot establish his case via *res ipsa loquitur* alone, but must instead provide something more than evidence that the accident occurred. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009 (8th Cir. 1998). *See also Lee v. Crookston Coca-Cola Bottling Co.*, 290 Minn. 321, 329, 188 N.W.2d 426, 432 (1971); *Magnuson v. Rupp Mfg., Inc.*, 285 Minn. 32, 44, 171 N.W.2d 201, 209 (1969).

---

[5] Citing *J & W Enters., Inc. v. Economy Sales, Inc.*, 486 N.W.2d 179, 181 (Minn. App. 1992) (stating that under "any theory of products liability, the plaintiff must show a causal link between the alleged defect and the injury" (citation omitted; internal quotation marks omitted)).

[6] Citing *Bilotta v. Kelley Co., Inc.*, 346 N.W .2d 616, n.3 (Minn. 1984) (strict liability); *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149 (Minn. 1982) (negligence); *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64 (1970) (breach of warranty).

Further, "where expert testimony must be solely relied on to show the causal connection between the alleged cause and a certain subsequent result . . . testimony which does nothing more than show a mere possibility, suspicion, or conjecture that such a causal connection exists, without any foundation for the exclusion of other admittedly possible causes, provides no proper foundation for a finding of a causal connection." *Bernloehr v. Cent. Livestock Order Buying Co.*, 296 Minn. 222, 224, 208 N.W.2d 753, 755 (Minn. 1972).

"Proof of a causal connection must be something more than merely consistent with the plaintiff's theory of the case." *Bernloehr*, 296 Minn. at 224, 208 N.W.2d at 754. "If the facts furnish no sufficient basis for inferring which of several possible causes produced the injury, a defendant who is responsible for only one of such possible causes cannot be held liable." *Id.; see also Sauer v. State Farm Mut. Auto. Ins. Co.*, 379 N.W.2d 213, 215 (Minn. Ct. App. 1986) (where the evidence shows that a purported theory of causation is no more plausible than another theory, the appellant has not established a prima facie case and a directed verdict is proper: a case cannot be founded on speculation and conjecture about causation).

Under Minnesota law, a plaintiff in a strict liability case must show that the product "is expected to and does reach the user or consumer *without substantial change in the condition in which it is sold.*" *Unterburger v. Snow Co., Inc.*, 630 F.2d 599, 603 (8th Cir. 1980) (citing *Magnuson*, 171 N.W.2d at 208; *McCormack v. Hankscraft Co.*, 278 Minn. 322, 154 N.W.2d 488 (1969)) (emphasis added).

Further, in a products case, a plaintiff may avoid summary judgment only "if the evidence reasonably eliminates improper handling or misuse of the product *by others than the manufacturer*, thus permitting the jury to reasonably infer that it was more probable than not that the product was defective." *Daleiden v. Carborundum Co.*, 438 F.2d 1017, 1022 (8th Cir. 1971) (citing *Holkestad v. Coca-Cola Bottling Co.*, 180 N.W.2d 860 (Minn. 1970)) (emphasis added).

A plaintiff must also show that the injury was not caused by unusual or abnormal handling of the product. *Moe v. MTD Prods., Inc.*, 73 F.3d 179, 183 (8th Cir. 1995) (citing *Magnuson*, 171 N.W.2d at 206). "To meet this requirement, the plaintiff must prove that he made proper use of the product, that he was in the exercise of due care for his own safety, that he was not aware of the defect and that he did not mishandle the product." *Rients*, 346 N.W.2d at 363. Misuse includes use of the product in a way that violates the directions and instructions that accompany the product. *Magnuson*, 285 Minn. at 44, 171 N.W.2d at 209. All such unusual or abnormal uses defeat liability. *Id.*

Application of these principles to the undisputed evidence in this case requires dismissal of plaintiff's claims.

### A.      Plaintiff Cannot Link the Explosion to a Defect in the Product

As noted above, plaintiff testified unambiguously that the can exploded when he shook it, and he denied that he ever struck the product on the wooden spool. He also testified unambiguously that the can was not dented when he purchased it.

Accordingly, given the plaintiff's claim, he must show that the explosion was caused by some defect in the product. To do so, he must offer admissible expert testimony connecting the explosion to the claimed defect.

Plaintiff has failed to meet that burden. As noted above, plaintiff's expert has offered two self-contradictory claims about the explosion: (1) he claims that the can exploded simply because it was shaken; and (2) he claims that the can exploded because (a) it fell or was struck at some time before plaintiff purchased it and (b) the earlier damage, in conjunction with plaintiff's shaking of the product, caused the can to explode.

Neither of these hypotheses is admissible.

**1.      Dr. Fox does not appear to believe that the can exploded simply because it was shaken. But that is plaintiff's claim in this case.** To the extent that Dr. Fox simply espouses plaintiff's testimony, his opinion should be rejected. As set out in Rust-Oleum's *Daubert* motion, that opinion is not supported by any scientific or

engineering analysis of any description. Dr. Fox has not shown that this opinion is generally held in the relevant scientific community. He fails to cite any published article supporting this theory of causation. His own published article does not even *consider* that scenario. He has not offered any engineering analysis showing that an aerosol can could fail simply because it was shaken. And he has never tested that hypothesis.

By contrast, Rust-Oleum's retained expert Kevin Lewis tested the claim and disproved it. As discussed above, Mr. Lewis devised a test protocol that involved dropping 20 cans a distance of four feet and then shaking the cans, using both human subjects and a mechanical device. None of the cans failed. That testing conclusively disproves Dr. Fox's "shake it up" hypothesis.

**2.      Dr. Fox's second opinion—that the can exploded because it fell or was struck at some time before plaintiff purchased it and was then shaken—is based on sheer speculation. Further, Dr. Fox's conclusion is not supported by any scientific or engineering analysis, is not generally held in the relevant community, and was never tested by Dr. Fox. To the extent that the opinion is testable, Mr. Lewis tested and disproved that opinion.**

*First*, there is absolutely no evidence that the can was damaged before plaintiff purchased it. In particular, there is *no* evidence that anyone damaged the can to the precise degree necessary to permit it to remain intact for some unknown period of time without exploding—only to explode only when plaintiff began using it. Dr. Fox is offering a purely speculative, even fanciful explanation.

Moreover, Dr. Fox is ignoring plaintiff's own testimony that he looked at the can and did not notice a dent in it. Further, Mr. Peters and Ms. Dahl have confirmed that the retailer, Peters Home and Hardware, does not sell damaged cans.

Dr. Fox appears to argue that plaintiff might have overlooked the dent. That claim, too, is based on pure speculation and is not a proper subject for expert testimony. Dr. Fox is not entitled to contradict his client's sworn testimony as well as the evidence from Mr.

Peters and Ms. Dahl of Peters Home and Hardware. *See, e.g., J.B. Hunt Transp. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) (affirming exclusion of expert testimony that contradicted eyewitness testimony); *Barban v. Rheem Textile Sys., Inc.,* 2005 WL 387660, *5 (E.D.N.Y. Feb. 11, 2005) (plaintiff's expert's opinion excluded as *ipse dixit* because it contradicted plaintiff's own testimony) (citing *Levine v. Sears Roebuck and Co.,* 200 F. Supp. 2d 180, 189 (E.D.N.Y.2002).)

In short, this opinion constitutes nothing more than guesswork. It is not admissible under Rule 702, and it does not suffice to avoid entry of summary judgment.

*Second*, Dr. Fox has failed to show that his "drop and shake" hypothesis is based on a scientifically reliable methodology. He has not cited any articles supporting the "drop and shake" hypothesis. No one has reported on such a scenario in any of the engineering or scientific literature. His own published paper did not consider that scenario. (*See* "Burst Failures.") Dr. Fox has not performed any engineering analysis of this scenario. And he never bothered to test the hypothesis by actually dropping and shaking any cans.

Further, as noted above, Rust-Oleum's retained expert Kevin Lewis tested and disproved Dr. Fox's hypothesis.

In short, plaintiff has not offered admissible expert testimony linking the incident to a defect in the product. The Court should therefore dismiss all of plaintiff's claims. *See Anderson*, 816 N.W.2d at 631-32 ( *"*[Under] any theory of products liability, the plaintiff must show a causal link between the alleged defect and the injury.").

### B.   Dr. Fox's Own Opinion Shows That Plaintiff Cannot Eliminate Improper Handling or Misuse by Others Than Rust-Oleum

As noted above, plaintiff in a products liability case may avoid summary judgment only "if the evidence reasonably eliminates improper handling or misuse of the product *by others than the manufacturer*, thus permitting the jury to reasonably infer that it was more probable than not that the product was defective." *Daleiden*, 438 F.2d at 1022

(emphasis added).

Further, under Minnesota law, a plaintiff in a strict liability case must show that the product "is expected to and does reach the user or consumer *without substantial change in the condition in which it is sold." Unterburger*, 630 F.2d at 603 (citing *Magnuson*, 171 N.W.2d at 208; *McCormack*, 154 N.W.2d 488) (emphasis added).

Plaintiff cannot make that showing. Indeed, plaintiff's own expert has offered the opinion that *someone* damaged the can before it reached plaintiff's hands. (*See, e.g.,* Fox Report at 7-5.) Further, plaintiff's own expert conducted testing showing that aerosol cans of a similar design will fail *only if they are subjected to significant abuse*—for example, by being dropped at least eight times from a height of six and one-half feet. (*See* "Burst Failures" at 326.)

In short, testing conducted by plaintiff's own expert shows that *someone must have mishandled the product before the explosion.* And that same testing shows that the mishandling *must* have been equivalent to dropping the can at least eight times from a height of six and one-half feet.

Given the results of Dr. Fox's own testing, a reasonable trier of fact would necessarily conclude that the product was improperly handled and that it had reached plaintiff with a substantial change in its condition. *See Daleiden*, 438 F.2d at 1022 (improper handling); *Unterburger*, 630 F.2d at 603 (substantial change in condition). Accordingly, the Court should enter summary judgment on all of plaintiff's claims against Rust-Oleum.

### C.   <u>Plaintiff's Warnings Claim Must Be Dismissed</u>

Plaintiff has also made a warnings claim. That claim, too, should be dismissed.

*First*, as set out above, all of plaintiff's claims should be dismissed because plaintiff has failed to set forth a causal link between the alleged defect and the incident in this case.

*Second*, plaintiff has not offered admissible evidence showing that some other warning would have made any difference in this case. As set out in Rust-Oleum's *Daubert* motion,

plaintiff's expert, Dr. Fox, is not qualified to offer opinions as to warnings. Further, Dr. Fox made no attempt to draft or test alternate warnings, and he has not cited any industry standards requiring more or different warnings from the ones provided by Rust-Oleum on the product itself.

Accordingly, the Court should enter summary judgment on plaintiff's warnings claim against Rust-Oleum.

### D.      Plaintiff's Spoliation Has Significantly Prejudiced Rust-Oleum's Ability to Defend Against Plaintiff's Claims

Remarkably, plaintiff's own expert does not believe plaintiff himself. Plaintiff testified that he purchased an undented can that blew up simply because plaintiff was shaking it. But plaintiff's expert believes that plaintiff is mistaken. He believes that someone must have damaged the can at some time before it reached plaintiff.

The blatant disagreement between plaintiff and his own expert warrants exclusion of Dr. Fox. After all, Dr. Fox is offering opinions about what is, in effect, an incident different from the one to which plaintiff testified.

Moreover, Dr. Fox's opinion highlights the prejudice that Rust-Oleum has suffered because of plaintiff's spoliation of the evidence. Dr. Fox knows that the spool constitutes powerful evidence relating to the cause of the incident. He knows that the condition of the spool can tell us whether or not plaintiff struck the can against the spool.

But plaintiff discarded this powerful evidence. He discarded it even after his attorneys knew of its existence.

As set out in Rust-Oleum's Motion for Sanctions for Spoliation, plaintiff's conduct prejudiced Rust-Oleum. Rust-Oleum cannot bring the spool into the courtroom and show it to the trier of fact. Rust-Oleum cannot point to the 24 witness marks that its expert, Dr. Richard Loucks, has identified in a photograph of the spool.

Plaintiff should not be permitted to benefit from his spoliation of this piece of critical evidence. He should not be allowed to claim that he did not strike the can when

19

that claim could be disproved by the evidence that he spoliated.

In particular, it would be grossly unfair in this case to allow plaintiff to proceed *given the opinions and testing of his own expert.* Overall, Dr. Fox's methodology is profoundly shabby. But he concedes that the can was damaged at some time. And the testing reported in his published article shows that aerosol cans will fail *only if they are subjected to significant, severe abuse.* ("Burst Failures" at 326.)

When was the can damaged? Setting aside plaintiff's self-serving testimony, the evidence in this case shows that plaintiff struck the can against the spool at least 24 times, caving in the bottom of the can and causing it to explode. And by spoliating the evidence of his conduct, plaintiff himself has demonstrated that *he knows that such conduct constitutes misuse of the product.*

As set out in Rust-Oleum's spoliation motion, the Court should conclude that plaintiff willfully spoliated this evidence. And it should conclude that the proper inference to be drawn from that spoliation is that *plaintiff struck the can against the spool.* If that inference is drawn, then plaintiff's claim must be dismissed.

## V.    <u>CONCLUSION</u>

Plaintiff's case rests on an expert report that relies on sheer, unadorned speculation and conjecture. Further, plaintiff willfully discarded the critical evidence of the wire spool. If that spool were available, it would confirm that plaintiff himself caused this incident by repeatedly slamming the paint can against the surface of the wire spool.

Because plaintiff has no admissible evidence in support of his claims, and because of his willful spoliation of critical evidence, Rust-Oleum respectfully requests that the Court enter summary judgment on all of plaintiff's claims.

Dated: February 21st, 2014.

**KUTAK ROCK LLP**

By: /s/ Thomas K. Klosowski
    Thomas K. Klosowski (#176321)

U.S. Bank Plaza South
220 South Sixth Street, Suite 1750
Minneapolis, MN 55402
Telephone: (612) 334-5017
Facsimile: (612) 334-5050
Email:
thomas.klosowski@kutakrock.com

**RIDDELL WILLIAMS P.S.**

By: /s/ Daniel J. Gunter
    Daniel J. Gunter (pro hac vice)

1001 Fourth Avenue, Suite 4500
Seattle, WA 98154-1192
Telephone: (206) 624-3600
Facsimile: (206) 389-1708
Email: dgunter@riddellwilliams.com

*Attorneys for Defendant Rust-Oleum*
*Corporation*