IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Darin Jerikovsky, | 12-CV-03119-JNE/LIB |
|         Plaintiff, | **MEMORANDUM IN SUPPORT OF DEFENDANT RUST-OLEUM CORPORATION'S MOTION FOR SANCTIONS FOR PLAINTIFF'S SPOLIATION OF EVIDENCE** |
| v. | |
| Rust-Oleum Corporation, | |
|         Defendant. | |

## I.    INTRODUCTION AND RELIEF REQUESTED[1]

This case arises out of an explosion of an aerosol can manufactured by defendant Rust-Oleum Corporation. Plaintiff's expert, Dr. Michael Fox, sometimes appears to opine that the explosion was caused simply by plaintiff shaking the can. Generally, though, he opines that the can exploded because it suffered some impact. One of Rust-Oleum's experts, Dr. Richard Loucks, agrees that the can exploded because it had been struck. Both experts agree that the impact was significant enough to deform the can.

Who or what caused that impact? Plaintiff testified that the can was not dented when he purchased it. At the time of the explosion, plaintiff was standing next to a large wooden cable spool, which he had turned onto its side to use as a painting table. A photograph of the spool taken on the afternoon of the accident shows what appear to be 24 witness marks, consistent with plaintiff having struck the can on the spool.

Plaintiff's expert assert that there are no marks on the top of the wooden spool. To support that claim, Dr. Fox relies on a low-resolution cell-phone photograph of the spool.

---

[1] Rust-Oleum is filing this motion concurrently and in conjunction with its (1) Motion for Summary Judgment and (2) Motion Under Rule 702 to Exclude Expert Testimony of Dr. Michael J. Fox.

Obviously, the spool itself would provide the best evidence as to its own condition. But plaintiff discarded this piece of crucial evidence. And he discarded that crucial evidence *after* his attorneys received photographs showing the wooden spool.

Given that plaintiff *and his counsel* knew of the existence of this crucial evidence long before he discarded it, Rust-Oleum requests that the Court enter an order finding that plaintiff willfully spoliated the evidence. The Court should conclude further that the evidence would have been harmful to plaintiff's position in this case. As a sanction, the Court should exclude Dr. Fox's expert opinion as to causation, as that opinion is based in critical part on spoliated evidence. Further, as explained in Rust-Oleum's Motion for Summary Judgment, the Court should conclude that plaintiff cannot prove his claims in this matter and thus that judgment should be entered on all of those claims.

## II.   EVIDENCE RELIED UPON

Rust-Oleum relies on the declarations of Daniel J. Gunter ("Gunter Decl."), Michael Murphy ("Murphy Decl."), Richard B. Loucks ("Loucks Decl."), Kevin Lewis ("Lewis Decl."), Warren Peters ("Peters Decl."), and Jill Dahl ("Dahl Decl."), and the exhibits attached thereto, filed Friday, February 21, 2014, with Rust-Oleum's summary judgment motion; and the pleadings and files in this case.

## III.   STATEMENT OF FACTS

### A.   Plaintiff Purchased an Undented Can of Rust-Oleum Spray Paint

This case arises from the explosion of a can of aerosol spray paint. Rust-Oleum purchased the part of the product at issue—that is, the can itself—from Ball Corporation. (Murphy Decl. ¶2.) Rust-Oleum filled and closed the can and subjected it to a hot-water bath test, in accordance with regulations promulgated by the Department of Transportation. (*Id.* ¶¶3-4.) The can passed the hot-water bath test. (*Id.* ¶4, Ex A.)

The can was manufactured in August 2007. (*Id.* ¶3.) Peters Home and Hardware in Crowell, Minnesota, purchased the can from a distributor. (Peters Decl. ¶5.)

Plaintiff purchased the can of paint during the afternoon of May 31, 2012. (Gunter

Decl., Ex. A (Jerikovsky Dep. at 44:10–17).) He purchased the product to spray-paint a part on a commercial truck that he was repairing. (*Id.* at 51:5–18.)

Mr. Warren Peters, one of the store's co-owners, has testified by declaration that Peters Home and Hardware does not stock or sell damaged goods. (Peters Decl. ¶¶4–6.) According to Mr. Peters, if Peters Home and Hardware receives damaged goods, those goods are destroyed, and Peter's requests a credit from the distributor. (*Id.* ¶5.) At the time of the purchase, the counter clerk at Peter's was Ms. Jill Dahl. Ms. Dahl has testified that she also adheres to the practice of not selling damaged products. (Dahl Decl. ¶¶5–6.)

Plaintiff also testified that the can was not damaged when he purchased it. In particular, he did not notice any dents in the can:

> Q. When you looked at the can, when you purchased it, did you notice anything that struck you as being unusual about the can?
>
> A. No.
>
> Q. Did it seem to be rusty?
>
> A. No.
>
> **Q. Did you notice any dents in it?**
>
> **A. No.**
>
> Q. Did it seem to be dusty?
>
> A. No.
>
> Q. Would it be fair to say that when you looked at it, it looked like your basic average can of spray paint on the shelf?
>
> A. Yes.

(Jerikovsky Dep. at 52:17–53:6 [emphasis added].)

Plaintiff had been trained not to strike an aerosol can, and he knew that doing so could cause it to explode, potentially resulting in personal injury. (*Id.* at 13:7–18:6.) On the day of the incident, he read the warning label on the Rust-Oleum can and understood that he should not strike the can. (*Id.* at 48:15–23, 92:9–93:18.)

3

Plaintiff testified that he did not strike the can on anything hard at any time between the purchase of the product and the explosion:

> Q   [B]etween the time you purchased the can or the time the explosion occurred, did you strike the can on anything hard?
>
> A.   **No. It went from my hand to my pickup seat and back to my hand.**
>
> Q.   **Pick up seat's soft, right?**
>
> A.   **Yes.**

(*Id.* at 56:4–10 [emphasis added].)

What happened next is in dispute. Plaintiff claims that the can simply exploded in his hand as he was shaking it. (*Id.* at 51:20–23; 53:7–54:3; 85:15–18.) Plaintiff's expert appears to believe that the can had been struck at some time before plaintiff purchased it, resulting in a dent at the bottom of the can. (*See* Gunter Decl., Ex. D ("Fox Report") at 7-5.) That opinion contradicts plaintiff's own unambiguous testimony that the can was *not* dented. But it is undisputed that, after the incident, the bottom of the spray can was dented.

What caused the dent in the can? As noted, plaintiff was using a wooden wire spool as a painting stand when the explosion occurred. (Jerikovsky Dep. at 54:8–12.) Plaintiff's expert, Dr. Fox, considered the possibility that plaintiff struck the can against the spool. He offers two reasons for rejecting that possibility: (a) plaintiff testified that he did not strike the can on the spool and (b) the spool does not show any witness marks from being struck by the can, and Dr. Fox would expect the spool to show such marks had it been struck. (Fox Report at 1-1 to 1-2, 4-5, 5-6, 8-2.)

Plaintiff has not produced the spool for inspection. (Gunter Decl., Ex. E at 1–3.) Indeed, he discarded the spool at some unknown time after the incident, and it cannot now be found. (*Id.* at 3.) Further, plaintiff did not merely permit the spool to be lost. Instead, he deliberately discarded the spool, taking it to a company that had no duty to

4

retain the spool and that has since lost track of it. (*Id.*) As an explanation for his actions, plaintiff claims simply that he no longer wanted the spool in his yard. (*Id.*)

But before plaintiff threw away the spool, two people photographed it: Randy Roberts, a deputy sheriff with Carlton County, and plaintiff's sister, Lisa Westendorf. (Roberts Decl. ¶¶6–10, Exs. 1 & 2; Gunter Decl., Ex. F.) Indeed, on June 20, 2012, Ms. Westendorf sent cell-phone photos of the spool to plaintiff's attorneys in this matter, the Robins Kaplan firm. (Gunter Decl., Ex. F.) By that time, plaintiff had been working with the Robins Kaplan firm for some unknown time, but certainly more than a week. (Gunter Decl., Ex. H at 1, s. (iii).) Accordingly, the undisputed evidence shows that plaintiff's attorneys knew of the existence of the spool before plaintiff ridded himself of it.

The evidence of the spool is obviously important. The deputy sheriff recognized that fact, as evidenced by the photographs that he took of it. Plaintiff's expert relied on a cell-phone photograph of the spool in forming his opinions. (Fox Report at 1-2.) And plaintiff's own sister sent photographs of the spool to plaintiff's counsel.

Rust-Oleum has been prejudiced by plaintiff's spoliation of this evidence. Dr. Richard Loucks, one of Rust-Oleum's experts, reviewed the deputy sheriff's photographs of the spool and counted a total of 24 marks on the top of the spool that appear to be witness marks—that is, marks caused by the striking of the Rust-Oleum can on the top of the spool:



(Loucks Decl. ¶¶2-3, Ex. A (Report of Dr. Richard B. Loucks ("Loucks Report") at 44–47).)

Through careful measurement of objects shown in the photograph, Dr. Loucks was able to confirm that the witness marks very closely match the size of the base of the aerosol can at issue. (*Id.* at 44–45.) But Dr. Loucks quite reasonably believes that the actual spool would provide additional evidence, as it would confirm the size and depth of the witness marks and other marks on the top of the spool. (*Id.* at 53.)

In short, plaintiff spoliated a piece of key evidence in this case. His spoliation has prejudiced Rust-Oleum's ability to defend this case.

The question before the Court is whether plaintiff should be entitled to benefit from his spoliation of that evidence.

## IV. AUTHORITY AND ARGUMENT

This Court's inherent powers include the discretionary authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012); *Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010). This broad discretionary authority includes the authority to issue an adverse inference instruction as a sanction for spoliation. *Sherman*, 687 F.3d at 1006.

An adverse inference instruction is appropriate if (1) a party violates a duty to preserve the evidence, (2) the party intentionally destroyed the evidence in a manner indicating a desire to suppress the truth, and (3) the opposing party was prejudiced by the destruction. *See Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993).

For the reasons set forth below, this Court should exercise its discretion and sanction plaintiff for intentionally destroying key evidence that could have disproved plaintiff's claim.

6

### A.     **Plaintiff Had a Duty to Preserve the Spool**

A party has a duty to preserve evidence if he or she knows or should know that the evidence is relevant to imminent litigation. *Dillon*, 986 F.2d at 268. In this case, plaintiff discarded the spool after he was injured and after his counsel knew of the existence of the spool. Plaintiff should have known that the spool was relevant because it contained evidence relating to the explosion at issue in this case.

Plaintiff cannot reasonably claim that he had no clue that the spool might constitute evidence. Deputy Sheriff Roberts understood that the spool constituted evidence. Plaintiff's sister emailed photographs of the spool to his attorneys within three weeks of the incident. Only one inference can be drawn from that email: plaintiff knew or should have known that the spool might be relevant to imminent litigation. Certainly his attorneys should have known that the spool might be relevant to imminent litigation. Further, the fact that the deputy sheriff photographed the spool confirms that any reasonable person would have known that the spool might be relevant to imminent litigation.

In short, plaintiff had a duty to preserve the spool, but failed to do so. He has not offered any legitimate explanation for his spoliation. His only explanation is that he did not want the spool in the yard. That does not excuse his spoliation of this key piece of evidence.

### B.     **Plaintiff Destroyed the Spool in Bad Faith**

The Court should also conclude that plaintiff intentionally destroyed the spool in a manner "indicating a desire to suppress the truth." *Hallmark Cards*, 703 F.3d at 460 (8th Cir. 2013). Because most people will not admit that they intentionally destroyed relevant evidence, the courts do not require such an admission for a finding of bad faith: "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *See Greyhound Lines, Inc. v. Wade*,

485 F.3d 1032, 1035 (8th Cir. 2007).

The direct and circumstantial evidence supports an inference of bad faith. *First*, plaintiff intentionally discarded the spool: he took active steps to destroy the evidence. *Second*, plaintiff spoliated this important evidence after litigation was more than probable—indeed, after he retained the Robins Kaplan firm to represent him, and after photographs of the spool were sent to that firm. Given that fact, plaintiff either knew or should have known that the spool constituted possible evidence in the matter.

Plaintiff has not provided a legitimate explanation for his spoliation of evidence. His only explanation was that he did not want the spool in his yard. He has not explained why he did not want the spool in the yard. The conclusion should be that he discarded the spool because it constituted evidence contrary to his claims in this case.

The plaintiff would have had a powerful incentive to retain the spool if it provided evidence *supporting* his claim. The evidence shows that plaintiff was using the spool as a painting stand. The evidence also shows that the can was dented after the incident. And plaintiff himself has testified that the can was not dented when he purchased it.

Given these facts, the natural question is whether plaintiff himself caused the explosion by striking the can on the spool.

Plaintiff's expert confirms that this is an entirely natural question. Dr. Fox claims that the spool does *not* show any evidence that plaintiff struck it with the can. Indeed, Dr. Fox relies heavily on that alleged fact in support of his opinions in this case

Accordingly, plaintiff had a very powerful incentive to retain the spool—*provided that it constituted evidence favorable to plaintiff.*

But plaintiff discarded this evidence. Why? The natural answer to that question is that he spoliated the evidence because it was unfavorable to his claim that the can simply blew up in his hand.

In short, the circumstances support a finding that plaintiff spoliated the spool with intent to suppress the truth. Moreover, under the circumstances of this case, the *only*

adverse inference that can be drawn is that the spool constituted evidence *showing that plaintiff struck the can on the spool.*

### C. Plaintiff's Spoliation Has Significantly Prejudiced Rust-Oleum's Ability to Defend Against Plaintiff's Claims

To impose an adverse inference sanction, Rust-Oleum must be prejudiced. *Hallmark Cards*, 703 F.3d at 460 (8th Cir. 2013). Rust-Oleum was prejudiced by plaintiff's spoliation if the spool "may have [been] helpful." *See* Dillon, 986 F.2d at 268.

It is beyond dispute that the spool may have been helpful to Rust-Oleum. As set out above, plaintiff's expert agrees that the aerosol can was struck before the explosion and that the striking of the can caused the explosion.[2] Plaintiff's expert agrees that one possible scenario involved plaintiff striking the container against the spool. And a photograph of the spool shows that it very likely contained witness marks and other evidence demonstrating that plaintiff struck the can against the spool. (*See* Loucks Report at 44–47.)

The photograph taken by the deputy sheriff constitutes very powerful evidence contradicting plaintiff's claim. (*See* Roberts Decl., Exs. 1 & 2.) But the spool itself would provide even better evidence. Had plaintiff not discarded the spool, Rust-Oleum could measure the marks on the spool, including the depth of those marks, and calculate precisely whether the marks matched the bottom of the can. (*See* Loucks Report at 44–

---

[2] Plaintiff's expert opines that "the JRO explosive failure is due to instantaneous and catastrophic circumferential cracking *caused by minor impact*." (Fox Report at 7-5.) Rust-Oleum disagrees that the impact was "minor." (Rust-Oleum is filing a separate *Daubert* motion as to Dr. Fox's opinions.) One of Rust-Oleum's outside experts, Mr. Kevin Lewis, dropped 20 cans from a height of four feet, and none of those cans failed. (*See* Lewis Decl., ¶¶2-3, Ex. A (Report of Kevin Lewis ("Lewis Report") at 11).) Rust-Oleum believes that such an impact is more than "minor." Further, Dr. Fox's own testing shows that aerosol cans will not fail from "minor impact": in his tests, aerosol cans failed only after being dropped at least eight times from a height of six and one-half feet. (Fox Report, Attachment D, "Circumferential Catastrophic Burst Failures" at 326.) Regardless of these issues, both Rust-Oleum and plaintiff's expert agree that the failure was "caused by . . . impact." (*See* Fox Report at 7-5; Loucks Report at 52.)

47.) With that evidence, Rust-Oleum could demonstrate powerfully that the can was struck against the spool—in fact, that plaintiff struck the can on the spool at least 24 times.

The dispute between plaintiff's expert and Rust-Oleum's expert confirms that, at the very least, there is a question as to whether the spool bore witness marks that would tend to confirm or disprove plaintiff's claims in this case. Because plaintiff spoliated this evidence, he prejudiced Rust-Oleum's ability to defend against plaintiff's claims.

## V.     CONCLUSION

Rust-Oleum respectfully requests that the Court enter an order sanctioning plaintiff for his intentional destruction of the spool. The spool constituted evidence that would have allowed Rust-Oleum to prove conclusively that plaintiff struck the can on the spool and caused his own injuries. Under the circumstances of this case, the Court should conclude that the adverse inference must be that the spool constituted evidence that plaintiff struck the can on the spool immediately before the incident. And, as explained further in Rust-Oleum's Motion for Summary Judgment, the necessity of drawing that inference requires dismissal of plaintiff's claims.

Dated: February 21st, 2014.  **KUTAK ROCK LLP**

By: /s/ Thomas K. Klosowski
   Thomas K. Klosowski (#176321)

U.S. Bank Plaza South
220 South Sixth Street, Suite 1750
Minneapolis, MN 55402
Telephone: (612) 334-5017
Facsimile: (612) 334-5050
Email:
thomas.klosowski@kutakrock.com

**RIDDELL WILLIAMS P.S.**

By: /s/ Daniel J. Gunter
   Daniel J. Gunter (pro hac vice)

1001 Fourth Avenue, Suite 4500
Seattle, WA 98154-1192
Telephone: (206) 624-3600
Facsimile: (206) 389-1708
Email: dgunter@riddellwilliams.com

*Attorneys for Defendant Rust-Oleum Corporation*

11

4829-3568-5912.04